IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| RITA M. PHILLIPS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-340-S-CWD |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |

## Introduction

Currently pending before the Court is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Rita Phillips ("Petitioner") on August 10, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on February 1, 2004, alleging disability due to migraines. (AR 105.) Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed. Administrative Law Judge Lloyd Hartford held a hearing on January 24, 2006, after which he concluded in his Decision dated September 13, 2006 that Petitioner was not

disabled. (AR 20-30.)  The Appeals Council denied Petitioner's appeal of the ALJ's decision on

June 20, 2008.  (AR 6-8.)  Petitioner appealed this final decision to this Court, which has

jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the 2006 hearing before ALJ Hartford, Petitioner was fifty-seven years of

age.  She has a high school education with five months of IBM secretarial training and on the job

training.  Her past relevant work includes work as a sales clerk, test technician - semi-conductor,

and printed circuit board ("PCB") inspector.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a

claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined

whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had

not engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

determined whether claimant suffers from a severe impairment.  The ALJ found Petitioner's

migraine headache disorder "severe" within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment.  The

ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed

impairments, specifically Listing 11.04 for neurological disorders.  If a claimant's impairments

do not meet or equal a listing, the Commissioner must assess the residual functional capacity

(RFC) and determine at step four whether the claimant has demonstrated an inability to perform

past relevant work.  The ALJ found Petitioner was able to perform her past relevant work as

either sales clerk, PCB inspector, and group leader PCB assembly. In reaching this conclusion,

the ALJ found that Petitioner could perform a wide range of light work activity on a sustained

basis not involving concentrated exposure to toxic chemicals, unprotected heights, or dangerous moving machinery.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ found Petitioner could perform past her relevant work; therefore, he did not need to proceed to step five.  Based on the foregoing, ALJ Hartford issued a finding of not disabled.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

**Memorandum Decision and Order - Page 3**

*Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court must not disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**IV.**
**Discussion**

Petitioner believes the ALJ erred at the second, third and fourth steps of the sequential evaluation process. Specifically, Petitioner maintains that ALJ Hartford erred at step two because he made no findings with regard to the Petitioner's cognitive impairment, anxiety or depression, or her diagnosis of central nervous system vasculitis which Petitioner claims lasted for twelve months or more.  Further, Petitioner contends that ALJ Hartford erred at step three because he did not specifically consider Listing 12.02 and his analysis of Listing 11.04 was in error. Finally, Petitioner contends that ALJ Hartford erred at step four because he failed to send Petitioner for a mental consultative examination and because he improperly weighed her credibility, improperly rejected portions of her treating physician's opinion, and improperly rejected her aunt's testimony.  Finally, Petitioner contends that the hypothetical posed to the vocational expert was in error.  The Court will address each of Petitioner's arguments in turn.

**A.      Step Two**

First, Petitioner argues that the ALJ erred at step two because he did not make any findings regarding Petitioner's cognitive impairment, anxiety, depression, or central nervous system vasculitis, all of which Petitioner claims had persisted for at least twelve months.

Prior to finding a medically determinable physical or mental impairment severe, a claimant must establish the existence of a physical or mental impairment. 42 U.S.C. § 423(d), Social Security Ruling (SSR) 96-4p *available at* 1996 WL 374181.[1]   An impairment must result

---

[1] Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations.  *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005).  In *Ukolov*, the Ninth Circuit found that SSR 96-4p was consistent with the purposes of Titles II and XVI of the Social Security Act.  *Id.*

from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-5 (9th Cir. 2005).   Reported symptoms alone cannot establish the existence of an impairment. *Id*. at 1005-6; SSR 96-4p.

Respondent argues that the ALJ did not err at step two because Petitioner had not been diagnosed with anxiety or depression disorders.  The Court agrees.  Although Dr. Han indicates that Petitioner suffered from symptomatic anxiety and depression, neither was formally diagnosed as a disorder.  Instead, Dr. Han noted that Petitioner used Lorazepam infrequently "on an as needed basis for symptomatic treatment of anxiety." (AR 294.)  Further, there are only two references to depression suffered by Petitioner in the record, once in 2001 and once in 2005, neither accompanied by any explanation of its severity or duration.  (AR 304, 295.) Therefore, the Court finds that the ALJ's decision that Petitioner's anxiety and depression are not severe is supported by substantial evidence.

Further, Petitioner contends that the ALJ should have found that her central nervous system vasculitis ("CNSV") and her cognitive impairment are severe.  Respondent argues that, even if they were severe, the ALJ's failure to analyze them at step two was harmless.  The Court agrees.  Where the ALJ does not list an arguably severe impairment at step two but proceeds to analyze the impairment's effects on residual functional capacity at a subsequent step, the error is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  Here, the symptoms and limitations in the record associated with CNSV are the same as those associated with Petitioner's condition that the ALJ found severe - Petitioner's migraine headache disorder.  The ALJ addressed these symptoms in his step four analysis.  Further, the ALJ specifically addressed the

**Memorandum Decision and Order - Page 6**

extent of Petitioner's cognitive limitations in his step four analysis, finding that the existence of a cognitive impairment lasting at least twelve months was unsubstantiated.  (AR 29.)  Therefore, the Court finds that, even if the ALJ committed error at step two by not concluding that Petitioner's CNSV and cognitive impairment are severe, it was harmless and does not necessitate remand.

**B.      Step Three - Listing 11.04 and 12.02**

The ALJ found that Petitioner's impairments did not meet or equal any listing. Specifically, the ALJ found that Petitioner did not meet or equal what he considered to be the most relevant listing, Listing 11.04 for central nervous system vascular accident.  Petitioner also argues that the ALJ should have examined whether Petitioner's impairments met or equaled Listing 12.02 for organic mental disorders.

If the claimant satisfies the criteria under a listing <u>and</u> meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience.  20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant has the burden of producing medical evidence that establishes all of the requisite medical findings that her impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or other, as to how her combined impairments equal a listing.  *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

First, Petitioner argues that the ALJ erred in his analysis of Listing 11.04 for central nervous system vascular accident.  This listing requires evidence of one of the following conditions more than three months after the alleged vascular accident: 1) sensory or motor

aphasia resulting in ineffective speech or communication; or 2) significant and persistent

disorganization of motor function in two extremities, resulting in sustained disturbance of gross

and dexterous movements, or gait and station. 20 C.F.R. § 404, Subpt. P, App. 1.   The ALJ

found no evidence in the record that Petitioner met this Listing.  First, the ALJ found that

Petitioner's cognitive abilities were greater than contemplated by the listing.  To support this

conclusion, the ALJ cited Petitioner's ability to take care of her home, read, do some crafts, help

her parents, drive, though infrequently, and crochet.  The ALJ noted that Petitioner quit her job

in late December of 2004 due to an episode of confusion, but noted that cognitively Petitioner

was still capable of living alone and maintaining her home except when she had a migraine

headache.  Finally, as discussed in more detail below, the ALJ correctly found that there was

evidence that Petitioner's cognitive limitations resolved after her severe migraine episodes,

including her hospitalizations in both January of 2005 and late May of 2005.

Petitioner argues that she did have persistent disorganization of gait and station; however,

this conclusion is contradicted by Dr. Han's treatment notes.  Shortly after Petitioner's

hospitalization in January 2005, Dr. Han's treatment notes indicate that although her cognitive

functioning was not normal, her station and gait were.  (AR 295.) This finding was repeated in

April 2005. (AR 294.)  On June 22, 2005, soon after Petitioner's hospitalization in late May of

2005, Dr. Han indicated that, besides a mildly wide-based station and gait, Petitioner's mental

and physical functioning was grossly normal.  (AR 293.)  Therefore, the Court finds that

Petitioner failed to meet her burden of demonstrating that she met Listing 11.04 and the ALJ's

conclusion was not in error.

Listing 12.02 requires evidence of "psychological or behavioral abnormalities associated

with a dysfunction of the brain.  History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities."  Petitioner also did not meet her burden of demonstrating that her impairments meet or equal this listing.  Petitioner did not offer any theory plausible or otherwise as to how her ailments equal Listing 12.02. Further, the Court notes that the ALJ's conclusion that Petitioner's cognitive impairments resolved after her hospitalization in June of 2005 undermines Petitioner's allegation that she meets Listing 12.02.  Therefore, the Court finds that Petitioner failed to carry her burden and the ALJ did not err by failing to discuss Listing 12.02.

Finally, Petitioner argues that the ALJ erred by not consulting a medical expert to determine whether Petitioner's impairments equal a listing.  Petitioner cites to Social Security Ruling 96-6p in support of this argument.  However, Social Security Ruling 96-6p  only requires a medical expert's opinion when either the ALJ or the Appeals Council are of the opinion that the symptoms, signs, and laboratory findings reported in the case record suggest that equivalence may be reasonable; or when additional medical evidence is received, that in the opinion of the ALJ or the Appeals Council, may change the state agency findings. Social Security Ruling 96-6p *available at* 1996 WL 374180. Neither situation is present here.   Therefore, the Court finds that Petitioner's argument that the ALJ should have consulted a medical expert is neither persuasive not supportive of remand.

## C.      Step Four - Residual Functional Capacity

Petitioner asserts that the ALJ's finding that she can perform her past relevant work as well as a wide range of light work activity not involving concentrated exposure to toxic

chemicals, unprotected heights, or dangerous moving machinery is in error.  Specifically, the Petitioner contends that the ALJ erred by discrediting the 2005 opinion of her treating physician, Dr. Han, by discounting her credibility, and by failing to give sufficient weight to her aunt's testimony.  Finally, Petitioner contends that the ALJ's hypothetical posed to the vocational expert was in error.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual functional capacity is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a).  An ALJ considers all relevant evidence in the record when making this determination.  *Id.* Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations.  *Bayliss*, 427 F.3d at at 1217. However, the AJL need not consider or include alleged impairments that have no support in the record.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2000).

### 1. Treating Physician Opinion

Petitioner contends that the ALJ improperly rejected her treating neurologist's opinions dated January 21, 2005, and January 16, 2006, indicating that Petitioner was unable to maintain employment.  Dr. Han has been treating Petitioner since May 5, 1998.  The only other opinion regarding Petitioner's ability to work is the opinion of the state medical consultant Thomas

Coolidge, M.D., who after an examination in June 2004, found Petitioner capable of sustaining employment. (AR 208-216.)

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from

**Memorandum Decision and Order - Page 11**

examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities.  *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

As previously noted, Dr. Han has been a treating physician of Petitioner since 1998. According to the ALJ, he carefully considered Dr. Han's opinion and gave Dr. Han's 2003 statement that Petitioner was released to resume full time work great weight.  The ALJ found this 2003 opinion of Dr. Han's was consistent with the opinion of Dr. Thomas Coolidge, the state agency's medical consultant.  Dr. Coolidge's assessment, dated June 2004, found that, despite Petitioner's history of complicated migraines and their unpredictability, Petitioner was capable of light work. (AR 208-216.)  Petitioner contests the ALJ's adoption of Dr. Coolidge's assessment and Dr. Han's 2003 opinion, in light of Dr. Han's later note and letter expressing his opinion that Petitioner was unable to sustain employment.

Dr. Han's January 2005 prescription note states: "Ms. Phillips is unable to work due to illness, ongoing medical condition." (AR 298.)  On January 16, 2006, Dr. Han wrote a letter to Petitioner's attorney stating again that he felt Petitioner would not be able to sustain work because of her "episodic exacerbations or flare-ups of her central nervous system vasculitis causing severe headaches and encephalopathy with impairment of cognitive functioning and inability to communicate verbally with impairment of comprehension as well as expression." (AR 320.)  Dr. Han further indicated that, although it was impossible to predict, Ms. Phillips would be likely to miss work or have to leave early anywhere from zero to ten days per month. (AR 320.)

**Memorandum Decision and Order - Page 12**

The ALJ dismissed Dr. Han's 2005 opinion that Petitioner could not work due to her disability on the grounds that it specifically pertained to the claimant's acute symptoms while hospitalized.  The Court agrees that the first of the two notes was written shortly after Petitioner's release from the hospital when her symptoms had not yet resolved.  However, it was written on the same date Dr. Han indicated in a treatment note that he supported her application for social security disability benefits.  (AR 297.)  Therefore, the Court finds this to be an insufficient basis to reject the 2005 note.  However, the Court otherwise finds the ALJ's rejection of Dr. Han's conclusions with respect to Petitioner's disability sufficient as explained below.

The ALJ found that Dr. Han's conclusion that Petitioner was disabled was unsupported on an ongoing basis.  The ALJ references treatment notes from Dr. Han after Petitioner's most recent serious migraines requiring hospitalization in January 2005 and May 2005.  Dr. Han's treatment notes show significant improvement in Petitioner's cognitive functioning between the two episodes and after the May 2005 episode.  On January 21, 2005, Dr. Han's treatment notes indicate that Petitioner was functioning at 70-80% of her normal cognitive ability. (AR 297.)  On February 7, 2005, Dr. Han noted: "Rita has had significant improvement in her cognitive functioning so that she is currently able to cook meals, do laundry and play games on her computer." (AR 295.)   On April 23, 2005, he recorded that Petitioner was "nearly back to her baseline level of neurological functioning." ( AR 294.)[2]

Although Petitioner was hospitalized again in May of 2005, Dr. Han's treatment notes dated June 22, 2005, indicate that "she has continued to improve cognitively and neurologically

---

[2] Petitioner's improvement is further supported by Dr. Gary Vaughn's treatment notes demonstrating that Petitioner had been slowly improving after her January 2005 hospitalization. (AR 240-242.)

since her discharge from St. Lukes about three weeks ago." (AR 293.) Further, the note stated

that Petitioner's neurological functioning had improved to the point that "she is back to her

baseline prior to her baseline over six months ago.  In other words, she is better than her baseline

prior to her recent hospitalization at the end of May." (AR 293.)

Additionally, Dr. Han noted that the diagnosis of CNSV was "right on and that treatment

with prednisone has been very effective." (AR 293.)  Laura Haney, Petitioner's aunt also testified

that Petitioner's cognitive function improved after her June hospitalization except for a few

memory issues.  Therefore, based on the treatment records, including those of Dr. Han, the Court

finds that the ALJ's conclusion that Petitioner's cognitive impairments cleared and were not on-

going is supported by substantial evidence.

Finally, the ALJ rejected Dr. Han's opinion in his January 2006 letter that Petitioner's

symptoms had worsened over the course of the last year.  The ALJ rejected this contention,

noting that there was no evidence in the medical records that the more recent episodes had not

cleared with treatment similar to past episodes.  Instead, as discussed above, there was evidence

that Petitioner's status improved significantly with treatment and medication in 2005, as it had

after prior episodes when Petitioner was still able to maintain full time employment.  Therefore,

the Court finds that the ALJ's conclusion that Petitioner's condition had not become significantly

worse since the time she had sustained full time employment was supported by substantial

evidence.  This also supports the ALJ's conclusion that there was insufficient evidence to

demonstrate that Petitioner's condition would result in ongoing limitations.

Based on the foregoing, the Court finds that the ALJ did not commit error in his analysis

of Dr. Han's opinions.

**Memorandum Decision and Order - Page 14**

## 2. Petitioner's Credibility

Examining Petitioner's testimony, the ALJ found that, although Petitioner has a history of complicated migraines along with recurrent episodes of confusion and weakness, her statements concerning the intensity, persistence, and limiting effects of these episodes were not entirely credible.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court should not

substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999).

        In evaluating credibility, the ALJ may engage in ordinary techniques of credibility

evaluation, including considering claimant's reputation for truthfulness and inconsistencies in

claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities,

claimant's work record, and testimony from physicians and third parties concerning the nature,

severity and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d

947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider the location, duration and frequency of

symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of

medications; and treatment measures taken by the claimant to alleviate those symptoms.  *See*

Soc. Sec. Ruling 96-7p.

        The ALJ discredited Petitioner based on inconsistencies in her testimony regarding the

frequency and duration of her migraine headaches.  In a questionnaire dated June 29, 2004,

Petitioner alleged she had at least four headaches per month lasting three days to sometimes

more than a week. (AR 141.)  In contrast, on another form she reported two to three severe

migraines per year in addition to one or two migraines per month that were not severe. (AR 155-

156.)  In January of  2005, Petitioner claimed she was having migraines with confusion two to

three times per month. (AR 297.) And, at the hearing on January 26, 2006, Petitioner testified

that she was having one to two migraines per month and had experienced at least three migraines

in 2005 lasting two or three weeks in duration. (AR 356.)

         Further, Petitioner testified that she has had migraines that have lasted for 30 days but

that she did not go to the hospital because her doctor instructed her to stay home.[3]  (AR  361.)

Petitioner contends that the inconsistencies are due to Petitioner's bad memory; however, the

Court finds this explanation inadequate to explain why there is such a large discrepancy

especially when discussing the duration of the migraines.  Further, Petitioner's statements

regarding her migraines that lasted for weeks at a time (other than those for which she was

hospitalized) are unsubstantiated by Dr. Han's treatment notes or other medical records.  Instead,

on October 13, 2004, Dr. Han reported that Petitioner's migraines typically lasted two to four

days (AR 300) and on January 16, 2006 that the confusion afterwards could last several hours to

several days. (AR 321.) Thus, the Court finds that the ALJ's conclusion that Petitioner's

testimony was inconsistent is supported by substantial evidence.

        The Court notes that Dr. Coolidge's RFC examination also supports the ALJ's conclusion

that Petitioner is not fully credible.  Upon review of Dr. Coolidge's original determination that

Petitioner was capable of performing light work, Dr. Coolidge found that Petitioner's complaints

were disproportionate to the severity of her condition, stating: "she has no problems of

communications (sic), remembering and quite deliberate in all conversations as noted.... She

continues w/disproportionate complaints as she functions quite well and with normal and

previous neurological exam."  (AR 216.)

        In the ALJ's analysis of Petitioner's credibility, the ALJ also emphasized Petitioner's

demonstrated ability to engage in substantial gainful activity while experiencing similar

---

        [3] The ALJ seems to question whether Dr. Han actually gave this advice to Petitioner
without at least advising her to consult him during her severe migraines.  (AR 373-376.) The
ALJ's suspicions are at least partially substantiated by Dr. Han's statement in a 2003 note that
"[s]he decided not to go to the hospital ER and fortunately, has done well in spite of it."  (AR
205.)

**Memorandum Decision and Order - Page 17**

complicated migraines prior to her alleged onset date of January 1, 2004.  This conclusion is

supported by the record.  Even in Petitioner's summary of the medical records, Petitioner lists

similar severe migraines involving hospitalization and cognitive impairment dating back as early

as 1990.  (Petitioner's Brief p.2-10, Docket No. 13.)   Even while experiencing these complicated

migraines, Petitioner was able to maintain full time employment.  She noted in her application

that she had never lost a job due to her condition. (AR 126.)[4]

       The ALJ also found that Petitioner's daily activities were inconsistent with her claim of

disabling migraines.  The ALJ specifically referenced Petitioner's activities at the time she

completed her application in 2004 which included leaving her home six days a week to visit

relatives or friends or to attend church.  The ALJ also refered to Petitioner's ability to watch

television, read, sew and garden. (AR 125.)  Additionally, the ALJ utilized Dr. Han's treatment

notes after Petitioner was released from the hospital for her severe migraine in January 2005 to

support his conclusion.  Petitioner argues that the fact she engages in certain daily activities does

not detract from her credibility.  *Vertigan v. Halter*, 260 F.3d 1044 (9th Cir. 2001).  The Court

agrees.  However, in this case the extent of her ability to perform tasks requiring memory and

concentration shortly after her severe migraine episodes supports the ALJ's conclusion that the

severity and duration of Petitioner's cognitive impairments likely is exaggerated by Petitioner.

       Based on the foregoing, the Court finds that the ALJ's credibility determination regarding

the severity and duration of Petitioner's cognitive impairments from her migraines was supported

by substantial evidence.

---

[4] The Court notes that Petitioner had to temporarily reduce her hours when she had
medication side effects in July of 2003.  Dr. Han provided a release to resume full time work in
August of 2003. (AR 204.) Petitioner later reduced her hours in 2004; however, this was not
based, as far as the Court can ascertain, upon Dr. Han's recommendation. (AR 202.)

### 3. Lay Witness Testimony

Petitioner further argues that ALJ Hartford did not properly consider the testimony of her aunt, Louise Haney. (AR 366-376.)  Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) *citing Nguyen v. Chater*, 100 F.3d 1462, 1467 ( 9th Cir. 1996) *internal citations omitted; Regennitter v. Commissioner of Social Sec. Admin*. 166 F.3d 1294 (9th Cir. 1999.)  The ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis*, 236 F.3d at 511 *citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

Petitioner's aunt, Louise Haney testified at the hearing on January 24, 2006, that Petitioner's migraines have become more severe since 2000 and that Petitioner's incapacity as a result of her migraines could last for weeks at a time. (AR 368.)  Ms. Haney noted that the last severe migraine she witnessed occurred during Petitioner's hospitalization in June 2005. (AR 371.) Further, she acknowledged that Petitioner's cognitive functioning improved after this hospitalization, except for some lack of memory. (AR 372.)   The ALJ considered Ms. Haney's testimony, finding that the evidence regarding Ms. Haney's aid to Petitioner and the fact that Petitioner experienced severe migraines was undisputed.  However, the ALJ found that Ms. Haney's testimony did not establish that Petitioner was unable to sustain light work, particularly in light of Petitioner's past work history and Dr. Coolidge's RFC report finding that Petitioner could perform light work despite her severe unpredictable migraines.  Further, the Court notes that Ms. Haney's testimony regarding the duration of Petitioner's migraines is unsubstantiated by Dr. Han's treatment notes or other medical records, as discussed above with respect to the ALJ's

assessment of Petitioner's credibility.  Thus, the Court finds that the ALJ's rejection of certain aspects of Ms. Haney's testimony was not in error.

**D.      Hypothetical posed to vocational expert**

Petitioner argues that the hypothetic posed to vocational expert Anne Aastum was in error because it did not include Petitioner's mental or cognitive limitations with respect to concentration and memory or how the stress of the workplace would impact Petitioner's condition.  Respondent argues that the ALJ's Residual Functional Capacity assessment was supported by substantial evidence and that any error in the hypothetical to Anne Aastum was irrelevant, because after finding that the Petitioner could perform her past relevant work at step four, the ALJ did not need to proceed to step five of the sequential evaluation.

At step four, the ALJ determined that Petitioner's residual functional capacity would allow her to perform her past relevant work as a sales clerk, PCB inspector, and PCB assembly group leader.  Because the ALJ found that Petitioner could return to her past work at step four, the ALJ was not required to determine whether Petitioner could perform any other work in the national economy.  *Barnhart v. Thomas*, 540 U.S. 20, 28 (2003).[5]  Therefore, there was no need for the testimony of a vocational expert.  *See Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996).

However, the Court also finds that the hypothetical posed to the vocational expert was consistent with the ALJ's findings in his residual functional capacity assessment. As noted above, the ALJ may exclude unsupported limitations or impairments in his hypothetical question to the vocational expert.  *See Bayliss*, 427 F.3d at at 1217;  *Osenbrock,* 240 F.3d at 1163-64.  The ALJ

---

[5] Petitioner argues that the ALJ should have considered her advanced age.  However, the ALJ did not need to consider Petitioner's advanced age in his step four analysis. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).

**Memorandum Decision and Order - Page 20**

found that Petitioner's allegations regarding her cognitive impairments and the severity and duration of her migraines were unsupported by the record.  Further, there is little if any evidence in the record demonstrating that Petitioner's allegations of shaking or clumsy hands and problems with balance and gait would impact her ability to work.  Therefore, the Court finds that the ALJ's hypothetical question posed to the vocational expert was based on his assessment of her limitations which, as discussed above, were supported by substantial evidence.   Therefore the Court finds that the hypothetical posed to the vocational expert did not constitute error.

**E.      Duty to Inquire**

Throughout Petitioner's brief, Petitioner argues that the ALJ should have referred Petitioner for further evaluation.  As noted by the Ninth Circuit, "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.' " *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir.2001) *quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir.1996).   Additionally, "the ALJ should not be 'mere umpire' during disability proceedings," but must " 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.' " *Widmark v. Barnhart,* 454 F.3d 1063, (9th Cir.2006).  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.' " *Id*.(citing *Smolen* , 80 F.3d at 1288).

In the instant case, the ALJ did not find that the evidence was ambiguous or that the record was inadequate.  The Court agrees, and finds that the ALJ had no duty to refer the Petitioner for further evaluation.

**Memorandum Decision and Order - Page 21**

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.



DATED: February 17, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge